1
2
3
4
5                      **UNITED STATES DISTRICT COURT**
6                            **DISTRICT OF NEVADA**

7 CHARLENE AMATO-FLEISHER,                )
                                          )
8                            Plaintiff,   )    Case No.: 2:08-cv-00567-PMP-GWF
                                          )
9 vs.                                     )    **ORDER**
                                          )
10 PROGRESSIVE DIRECT INSURANCE           )    **Re: Defendant's Motion to Compel**
   COMPANY, f/k/a PROGRESSIVE HALCYON     )    **Second Medical Examination (#19), and**
11 INSURANCE COMPANY,                     )
                                          )    **ORDER Bifurcating Trial of**
12                           Defendants.  )    **Contractual and Bad Faith Claims**
   _____)

13

14        This matter is before the Court on Defendant's Motion to Compel a Second Medical

15 Examination of Plaintiff Charlene Amato-Fleisher (#19), filed on November 4, 2008; Plaintiff's

16 Opposition to Defendant Progressive Direct Insurance Company's Motion to Compel a Second Medical

17 Examination of Plaintiff Charlene Amato-Fleisher (#21), filed November 13, 2008; and Defendant's

18 Reply to Plaintiff's Opposition to Motion to Compel a Second Medical Examination of Plaintiff

19 Charlene Amato-Fleisher (#22), filed November 26, 2008.  The Court conducted a hearing in this

20 matter on December 15, 2008.

21                            **BACKGROUND**

22        This case involves claims for breach of contract, breach of the covenant of good faith and fair

23 dealing, and violation of the Nevada Unfair Claims Practices Act, NRS 686A.310, arising out of a

24 claim for underinsured motorist coverage benefits.  Plaintiff's Complaint was filed in the Nevada

25 District Court on February 26, 2008 and the action was removed to this Court on May 6, 2008.  *Notice*

26 *of Removal (#4), Exhibit "A" ("Complaint")*.

27        Plaintiff Charlene Amato-Fleisher ("Amato") allegedly sustained injuries in a motor vehicle

28 accident on August 25, 2005 when the vehicle in which she was a passenger was struck from behind by

1    a vehicle operated by Katie Hayden ("Hayden").  According to the Complaint, as of June 7, 2007,

2    Amato had incurred medical expenses in excess of $45,000.00.  On April 11, 2007, Dr. Rimoldi, an

3    orthopedic surgeon, reported that Amato was a candidate for a cervical diskectomy and fusion surgery

4    at C4-5 and C5-6, and that the estimated cost of surgery would be approximately $85,000.00.  Hayden's

5    liability insurer, Allstate, paid Amato the $100,000 limits of its policy.  Plaintiff also received the

6    $15,000 underinsured motorist coverage limits and the $10,000 medical expense coverage limits of the

7    policy that insured the vehicle in which she was riding.

8          Amato was also insured under an automobile policy issued by Defendant Progressive Direct

9    Insurance Company ("Progressive") which provided underinsured motorist coverage in the amount of

10   $250,000.00 per person and $500,000.00 per accident.  On June 7, 2007, Amato's attorney sent a

11   demand letter to Progressive for payment of the underinsured motorist coverage limits of its policy.

12   *Motion to Compel (#19), Exhibit "B."*[1]  In response to Amato's policy limits demand, Progressive

13   requested that Amato submit to a medical examination pursuant to the provision of the policy which

14   states that "[a] person claiming coverage must: 8. submit to medical examinations at **our** expense by

15   doctors **we** select as often as **we** may reasonably require." *Motion to Compel (#19), Exhibit "F."*

16         Progressive retained Benjamin Venger, M.D., a neurosurgeon, who examined Amato on

17   November 26, 2007.  Based on his examination and review of Plaintiff's medical records, Dr. Venger

18   opined that Amato had pre-existing degenerative conditions in the cervical spine which were

19   exacerbated by the accident.  He rated "at least 50% of the patient's symptoms consistent with her

20   degenerative changes and 50% related to the accident." *Motion to Compel (#19), Exhibit "G."*  Dr.

21   Venger indicated that Dr. Rimoldi's surgical recommendation was based on a "positive" discogram.

22   Dr. Venger stated, however, that a CT Scan showed no exacerbation of the discogram dye.  He further

23   stated:

24              The patient is unsure as to whether she wishes to proceed with surgery.  I
                am somewhat concerned regarding the inconsistency of the discogram in
25              that the discs appear to be at least normal.  This did show degenerative
                changes but no real extravasation of dye.  This to me is somewhat
26

27   ─────────────────────
           [1] Progressive paid Amato's health care providers the $10,000 limits of its medical payments
28   coverage.

2

1    inconsistent.  I am not a great fan of cervical discography.  I do not think
2    it is as accurate as lumbar discography.  The predominate changes at least
     on the MRI scan from two years ago and on the most recent CT are
3    degenerative in nature and I think that the process that she had preceded
     the accident.

4    *Id.*

5           In a follow-up December 14, 2007 report, Dr. Venger stated that, in the absence of other

6    findings, he would not recommend that Ms. Amato have cervical spine surgery based on the positive

7    discogram.  *Id.*

8           Based on Dr. Venger's reports, Progressive allegedly concluded that Amato did not require

9    cervical spine surgery and that she had been fully compensated for her injuries by the other insurance

10   benefits already paid to her.  *Complaint (#4)*, ¶ 23.  Plaintiff thereafter filed her instant action on

11   February 26, 2008.

12          In or about March 2008, Dr. Venger testified for the Government at the federal criminal trial of

13   Las Vegas personal injury lawyer Noel Gage, whom the Government alleged engaged in a fraudulent

14   conspiracy with local physicians and others in regard to a medical malpractice lawsuit.  Dr. Venger

15   reportedly testified that he conspired with attorney Gage and others to manipulate another case and

16   admitted that he had committed perjury while testifying as a medical expert in other cases.  Although

17   Dr. Venger's actual trial testimony has not been provided to this Court, his admission under oath that he

18   has committed perjury has been the subject of news media reports.  *See e.g. Motion to Compel (#19),*

19   *Exhibit "D."*  The parties to this case do not dispute the nature of Dr. Venger's testimony in the Gage

20   trial.

21          Following Dr. Venger's testimony in the Gage trial, Defendant's counsel sent an April 8, 2008

22   letter to Plaintiff's counsel notifying him that Progressive was exercising its right under the Policy to

23   request Plaintiff to submit to a second "Independent Medical Examination"  ("IME") which Defendant

24   had scheduled with Thomas Dunn, M.D. for April 28, 2008.  *Motion to Compel (#19), Exhibit "E."*

25   Defendant's counsel's letter did not provide an explanation why a second examination was being

26   sought.  Plaintiff's counsel responded by letter dated April 9, 2008 in which he stated that Dr. Venger's

27   report indicated that he had fully addressed all issues concerning Ms. Amato's condition.  He further

28   stated that it was Plaintiff's position that Progressive's breach of the Policy excused Plaintiff's

                                                      3

1  obligation to submit to a second IME absent a court order.  *Motion to Compel (#19), Exhibit "G."*

2      According to Defendant's counsel, Dr. Venger has reportedly left the neurological clinic with

3  which he was associated and is no longer practicing medicine.  Defendant also states in its Reply (#22),

4  p. 6, that upon calling Dr. Venger's prior office, Progressive was informed that Dr. Venger's coworkers

5  were unaware of his future plans and that he had entered a treatment facility.  Defendant also suggests

6  that Dr. Venger's license to practice medicine may be in doubt by virtue of his testimony in the Gage

7  trial.  Plaintiff's counsel responds to these assertions by stating that he has seen Dr. Venger out and

8  about town, that he has knowledge of Dr. Venger's address and telephone number which he is willing

9  to provide to Defendant's counsel, and that Plaintiff intends to subpoena Dr. Venger to appear for his

10  deposition regarding his examination of the Plaintiff.  *Opposition (#21)*, pp. 9-10.

11      Ms. Amato apparently has not yet undergone cervical spine surgery.  The Court has not been

12  provided with information whether there has been any material change in her condition since her

13  examination by Dr. Venger on November 26, 2007.

14                    **DISCUSSION**

15      Defendant argues that it should be permitted to obtain a second medical examination of Ms.

16  Amato because Dr. Venger's credibility as a medical expert witness has been destroyed by virtue of his

17  testimony in the Gage case.  Defendant also argues that Dr. Venger may be unavailable to testify at trial

18  because he is no longer practicing medicine and because of possible issues with his medical license.

19  Finally, Defendant argues that because a year has passed since Ms. Amato was examined by Dr.

20  Venger, good cause independently exists for a second medical examination.

21      Fed.R.Civ.Pro. 35(a)(1) provides that the court may order a party whose mental or physical

22  condition is in controversy to submit to a physical or mental examination by a suitably licensed or

23  certified examiner.  Subsection (a)(2)(A) further provides that the order "may be made only on motion

24  for good cause and on notice to all parties and the person to be examined."

25      In *Schlagenhauf v. Holder*, 379 U.S. 104, 85 S.Ct. 234, 242-43 (1964), the Supreme Court held

26  that the Rule 35 requires an affirmative showing by the movant that the condition as to which the

27  examination is sought is really and genuinely in controversy and that good cause exists for ordering

28  each particular examination.  Rule 35 requires discriminating application by the trial judge who must

4

1  decide in each case whether the party requesting the examination has adequately demonstrated the

2  existence of the Rule's requirements.  The Court further noted that there are situations where the

3  pleadings alone are sufficient to meet the requirements:  "A plaintiff in a negligence action who asserts

4  mental or physical injury, ... places that mental or physical injury clearly in controversy and provides

5  the defendant with good cause for an examination to determine the existence and extent of such

6  asserted injury." *Id.* at 243.

7       There is no dispute that Plaintiff's cervical spine condition and need for surgery is in

8  controversy.  The issue is whether Defendant has good cause to obtain a second medical examination of

9  the Plaintiff.  In *Peters v. Nelson*, 153 F.R.D. 635, 637-38 (N.D. Iowa 1994), the court noted that Rule

10  35 does not limit the number of examinations and that a general limitation would not be judicious.

11  Instead, the court stated:

12       Each request for an independent medical examination must turn on its
         own facts, and the number of examinations to which a party may be
13       subjected depends solely upon the circumstances underlying the request.
         Even when a previous examination has been ordered in the same case, a
14       subsequent examination may be ordered if the court deems it necessary.
         (internal citations omitted)
15

16       The court cited various examples which justify a second or additional examinations, including

17  the following:  (1) separate injuries calling for examination by distinct medical specialities; (2) where a

18  physician requires assistance of other consultants before he can render a diagnosis; (3) where the first

19  examination was not adequate or complete; and (4) where a substantial time lag occurred between the

20  initial examination and trial.  *Id.* at 638.  *See also Moore v. Calavar Corp.*, 142 F.R.D. 134, 135 (W.D.

21  La. 1992).

22       The only example cited in *Peters* that arguably applies here is the fact that one year has now

23  passed since Dr. Venger examined Ms. Amato.  In this regard, *Edson v. Liberty Mut. Ins. Co.*, Not

24  Reported in F.Supp., 2002 WL 31944902 *1 (N.D. Cal. 2002) states:  "As Professors Wright, Miller

25  and Marcus observe, '[I]f permanent injuries are claimed most courts will, on request, allow an

26  additional examination shortly before trial.'  Charles Alan Wright, et. al. 8A *Fed. Prac. & Proc.* § 2234,

27  p. 475 (2nd Ed. 1994)."  The court stated that good cause for another medical examination existed

28  because two years had elapsed since the prior examination, and plaintiff's condition may have improved

1   since then.  *Id.,* citing *Lewis v. Neighbors Constr. Co.*, 49 F.R.D. 308, 309 (W.D. Mo. 1969).  *Edson*

2   also noted that "the injured party would not expect to go to trial without an up-to-date examination by

3   his own physician.  Upon what logic should the opposing party be denied the right to be equally

4   prepared to present the issue?"  *Id.* at *2.

5          The passage of time since Dr. Venger's examination does not, standing alone, support good

6   cause for a second defense medical examination *at this time*.  First, only a little over one year has

7   passed since the examination and this case is not yet approaching trial.  Discovery does not expire until

8   April 23, 2009 and the joint pretrial order is not due until June 24, 2009.  No trial date has been set.

9   Second, there is no indication of any material change in Ms. Amato's medical condition, diagnosis or

10  prognosis since the last examination.  While a second medical examination may be justified on this

11  ground as the case gets closer to trial, such circumstances are not yet present.  Defendant has also not

12  demonstrated that Dr. Venger is or will be physically unavailable to testify at deposition or trial.

13         Obviously, Defendant's principal reason for requesting another medical examination of the

14  Plaintiff is that Dr. Venger's credibility as an expert medical witness has been destroyed by his

15  testimony in the Gage case.  As Plaintiff's counsel makes clear in his Opposition (#21), he intends to

16  impeach Dr. Venger's medical opinion not only on the substantive basis for his medical opinion, or

17  because he is a "hired-gun" for the insurance company, but also because he is an admitted perjurer.

18         Good cause under Rule 35 contemplates that the party seeking a second medical examination is

19  not, itself, at fault in causing the alleged need for a second examination.  A party who selects a medical

20  examiner, whom it knows or should know is not qualified or can be readily impeached, is probably not

21  entitled to obtain an examination by another examiner once it realizes its error in selecting the first

22  examiner.  Dr. Venger's testimony in the Gage case did not take place until several months after he

23  performed his examination of the Plaintiff.  While Plaintiff argues that Defendant was apparently aware

24  of Dr. Venger's credibility issues prior to retaining him as an expert, Opposition(#21), p. 6, no evidence

25  has been presented to support this assertion.  There is also no evidence that Plaintiff objected to

26  Defendant's selection of Dr. Venger as the examiner based on his allegedly known record of providing

27  false medical opinions.

28  . . .

6

1    This is also not a case in which the Defendant appears to desire a second examination because it

2    is unsatisfied with the opinion it received from the first examiner.  Dr. Venger stated that Plaintiff did

3    not require cervical spine surgery based on his examination and review of her medical records and

4    diagnostic studies.  There is no reason to believe that Defendant would have sought another opinion

5    from a second physician, but for Dr. Venger's subsequent testimony in the Gage case which fatally

6    poisons his credibility as an expert witness in this or any other case.

7    The impartiality of medical experts who are retained and paid by the litigants is debatable and is

8    a rife subject for impeachment at trial.  Dr. Venger's reported testimony in the Gage case is sad

9    evidence of the corruption of expert testimony that exists in our legal system.  Nevertheless, there is no

10   basis for concluding that Defendant should have anticipated Dr. Venger's testimony in the Gage case

11   which has destroyed his credibility as a medical expert witness.  Nor will the Court presume that Dr.

12   Dunn, whom Defendant proposes to conduct a second examination of Ms. Amato, will not render a fair

13   and reasonable opinion regarding her medical condition and potential need for surgery.  Dr. Dunn will,

14   of course, have to consider the same medical evidence that Dr. Venger considered in rendering his

15   medical opinion (as well as any new information that may have developed since the last examination)

16   because the reason for granting a second examination is Dr. Venger's total loss of credibility as an

17   expert.  This obviously disposes of Plaintiff's argument that the second examination should also be

18   performed by Dr. Venger.

19   The Court therefore concludes that good cause exists for permitting Defendant to obtain a

20   second medical examination of Plaintiff by Dr. Dunn pursuant to Fed.R.Civ.Pro. 35.  The Court also

21   finds that permitting Defendant to obtain another medical examination of Plaintiff's cervical spine

22   condition and need for surgery promotes the public interest that Plaintiff's contractual claim for policy

23   benefits be decided on its merits.

24   Plaintiff, however, has a legitimate concern that if Defendant is permitted to obtain a second

25   medical examination and opinion by Dr. Dunn, Plaintiff could be placed in the unfair position of having

26   to overcome the opinions of two defense-retained neurosurgeons in order to prove her contractual claim

27   for underinsured motorist benefits.  Dr. Venger's examination and opinions are also relevant and

28   admissible evidence in regard to Plaintiff's claims that Progressive breached its duty of good faith and

7

1   fair dealing and violated NRS 686A.310 in denying her claim for underinsured motorist coverage

2   benefits in January 2007, (hereinafter the "bad faith" claims).

3        The  parties agreed at the hearing on this motion that these legitimate concerns can be resolved

4   by bifurcating the trial of Plaintiff's contractual and bad faith claims.  In *Drennan v. Maryland*

5   *Casualty. Co.*,  366 F.Supp.2d 1002, 1007-08 (D.Nev. 2005), the court held that bifurcating the trial of

6   the contractual and bad faith claims was appropriate because it could potentially avoid the need for trial

7   on the bad faith issues, would simplify the issues and avoid the possibility of undue prejudice by

8   allowing the jury to hear evidence of bad faith only upon establishing that the insurer breached the

9   contract.  The unusual circumstances that have arisen regarding Dr. Venger's credibility as a medical

10   expert provide additional grounds for bifurcation of the trial in this case.

11                                                **CONCLUSION**

12        Based on the foregoing, the Court will grant Defendant's request for a medical examination of

13   Plaintiff by Dr. Thomas Dunn and will order that trial shall be bifurcated.  Plaintiff's breach of contract

14   claim for underinsured motorist coverage benefits shall first be tried to the jury.  Evidence regarding Dr.

15   Venger's examination, opinions or reports shall not be introduced in evidence by either party during the

16   breach of contract phase of the trial.[2]  Nor will either party's witnesses or counsel make reference to Dr.

17   Venger during the breach of contract phase of the trial.  Dr. Dunn shall also not make any reference in

18   his report or in his testimony to Dr. Venger's examination or opinions during the breach of contract

19   phase of the trial.

20        After the jury renders its verdict on the breach of contract claim, trial of Plaintiff's "bad faith"

21   claims shall proceed, if necessary, before the same jury.  During this second phase of trial, evidence

22   regarding Dr. Venger's examination, reports and opinions, as well as evidence relating to his

23   impeachment, may be admitted as they relate to Plaintiff's claim that Defendant acted in bad faith or

24   breached its statutory duties under NRS 686A.310 by denying Plaintiff's demand for the payment of

25   underinsured motorist coverage benefits.  Accordingly,

26   _____

27        [2]If, for example, Dr. Dunn renders a medical opinion that is more favorable to Plaintiff's
     contractual claim than was Dr. Venger's opinion, Defendant will not have the option of introducing Dr.

28   Venger's opinions or testimony in defense to Plaintiff's breach of contract claim.

                                                      8

**IT IS HEREBY ORDERED** that Defendant's Motion to Compel a Second Medical Examination of Plaintiff Charlene Amato-Fleisher (#19) is **granted** subject to the following orders:

1.      Evidence or argument regarding Dr. Venger's examination, opinions or reports shall not be introduced in evidence by either party during the breach of contract phase of the trial, but may be introduced in evidence in the bad faith portion of the trial as described in the foregoing order.

2.      The parties shall agree on a date for the medical examination of Plaintiff by Thomas Dunn, M.D. in accordance with the provisions of Fed.R.Civ.Pro. 35 and consistent with the scheduling order in this case.

**IT IS FURTHER ORDERED** that Plaintiff's breach of contract claim for underinsured motorist coverage benefits shall be first tried to the jury.  After the jury renders its verdict on Plaintiff's breach of contract claim, the trial of Plaintiff's claims for breach of the covenant of good faith and fair dealing and for violation of NRS 686A.310 shall proceed, if necessary, before the same jury.

DATED this 16th day of December, 2008.

GEORGE FOLEY, JR.
United States Magistrate Judge

9